ASSOCIATED RESIDENTIAL DE-SIGN, LLC, a Nevada limited liability company, Plaintiff,

v.

Ralph MOLOTKY, an individual; Barbara Molotky, an individual; and Does 1 through 30, Defendants.

No. CV–N–00–0572–ECR–RAM.

United States District Court, D. Nevada.

Oct. 2, 2002.

Rick Oshinski, Scarpello Huss Oshinski, for plaintiff.

Michael Hoy & Wayne Shaffer, Bible, Hoy & Trachok, Reno, NV, for Barbara Molotky.

Wayne Shaffer, Bible, Hoy & Trachok, Reno, NV, Mark Smallhouse, Hoy & Smallhouse, LLP, Reno, NV, for Ralph Molotky.

## ORDER

EDWARD C. REED, JR., District Judge.

We now consider defendants Ralph and Barbary Molotky's ("Molotkys") motion for partial summary judgement regarding measure of recovery (# 42). Plaintiff Associated Residential Design, LLC ("ARD") opposed the motion (# 43). Defendants replied (# 44).

## BACKGROUND

For purposes of the Molotkys' motion and this order, the facts in this case are straight forward. This case arises out of an alleged infringement by the Molotkys of a copyright held by ARD. In 1998, ARD prepared a set of architectural drawings for Dan Deeter Homes ("Deeter") which were used to construct a home situated in the Arrowcreek subdivision at 1391 Amado Court, Reno, Nevada. Deeter paid ARD approximately $8,200.00 for the drawings. The home was constructed, and subsequently sold to Eugene Boylan.[1]

The Molotkys obtained a set of the drawings prepared by ARD, and used them as a basis to design their own home built in the same subdivision as the Boylan home. ARD has alleged that the Molotkys infringed on ARD's architectural plans. For the purpose of their motion for partial summary judgement only, the Molotkys do not dispute ARD's allegation of copyright infringement. To date, the Molotkys have not sold the home at issue in this case, which is located approximately one mile from the Boylan home.

This motion concerns the purely legal question regarding the proper interpretation of the word "profits" in 17 U.S.C. § 504 (2002). The Molotkys contend that § 504(b) requires the infringing item to be sold before a prevailing copyright holder can collect the infringer's profits. Because the Molotkys have not sold the home at issue here, they argue that § 504(b) profits are not available in this case if ARD wins its infringement claim. On the other hand, ARD asserts that § 504(b) permits the recovery of profits where the infringer has benefitted from the infringement. ARD contends that the Molotkys have realized a benefit, or profit, measured by the value of their home, minus the cost to construct it.

The parties have suspended discovery in this case pending the court's decision of the Molotkys' motion. The parties believe that a decision regarding the availability of § 504(b) profits will guide their expert witness discovery.

## STANDARD

Summary judgment allows courts to avoid unnecessary trials where no material factual dispute exists. *Northwest Motorcycle Ass'n v. U.S. Department of Agriculture*, 18 F.3d 1468, 1471 (9th Cir.1994). The court must view the evidence and the inferences arising therefrom in the light most favorable to the nonmoving party,

---

1. As the present motion does not concern the claim of champerty regarding Mr. Boylan, and the parties have not fully briefed the court on this issue, we decline to address it in this order.

*Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir.1996), and should award summary judgment where no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. Fed.R.Civ.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir.1995), *cert. denied*, 516 U.S. 1171, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Although the parties may submit evidence in an inadmissible form—namely, depositions, admissions, interrogatory answers, and affidavits—only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. Fed.R.Civ.P. 56(c); *Beyene v. Coleman Security Services, Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988).

In deciding whether to grant summary judgment, a court must take three necessary steps: (1) it must determine whether a fact is material; (2) it must determine whether there exists a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3)

it must consider that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Summary judgement is not proper if material factual issues exist for trial. *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir.1999). As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Disputes over irrelevant or unnecessary facts should not be considered. *Id.* Where there is a complete failure of proof on an essential element of the nonmoving party's case, all other facts become immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Summary judgment is not a disfavored procedural shortcut, but rather an integral part of the federal rules as a whole. *Id.*

## ANALYSIS

### I. 504(b) Profits

Defendants assert that 17 U.S.C. § 504(b), entitling a plaintiff in a copyright infringement action to actual damages plus the infringer's profits, only allows a plaintiff to recover profits realized from the sale of the infringing item. Plaintiff, on the other hand, argues that a copyright holder may be entitled to the infringer's profits where the defendant has benefitted from the infringement, or realized some gain beyond expenses. In other words, Plaintiff argues that the infringing item does not have to actually be sold before the infringer's profits can be recovered.

### A. 17 U.S.C. § 504 in General

Under the Copyright Act, a prevailing copyright holder in an infringement action can recover actual damages plus any additional profits realized by the infringer. § 504. Although the Act allows recovery for both damages and the infringer's profits, double recovery by the plaintiff is for-

bidden. That is, the infringer's profits are only recoverable to the extent that they were not "taken into account in computing damages." *Id.; see also Eales v. Envtl. Lifestyles, Inc.*, 958 F.2d 876, 881 (9th Cir.1992) ("[504(b) ] bars a plaintiff from recovering in the form of damages the profits it could have made from selling the infringing item...and the profits gained by the infringer from its use of the copyrighted item."). In calculating the infringer's profits, the burden is initially on the plaintiff to produce evidence of the defendant's gross revenue derived from the infringement. § 504(b). Once the plaintiff has met this burden, the defendant can show any deductible expenses and other elements of the profits attributable to factors other than the infringement. *Id.*

The Ninth Circuit has discussed the proper measure of actual damages in a copyright infringement action regarding architectural plans. In *Eales v. Environmental Lifestyles, Inc.*, the court explained that, "[plaintiff] is entitled to the lost fair market value of the architectural plans," measured by, "what a willing buyer would have been reasonably required to pay a willing seller for plaintiff's work." 958 F.2d at 880. This measure of actual damages is generally not disputed by the parties in this case. *See* Defense Motion for Partial Summary Judgment Regarding Measure of Recovery at 6–7 ("Motion for Partial Summary Judgment"); Opposition to Defense Motion for Partial Summary Judgment Regarding Measure of Recovery at 7 ("Opposition").

The issue which must be addressed by this court is the exact meaning of the term "profits" as it is used in § 504(b). The statutory language, legislative intent, and case law are instructive here.

**B. "Profits"**

Section 504(b) of the Copyright Act reads in full,

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any *profits* of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross *revenue*, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work (emphasis added).

Congress did not provide a definition of the terms "profits" or "revenue" in the Copyright Act.

Defendants argue that a plain reading of this section limits the award of profits to cases where a defendant actually sells an infringing item, thereby gaining tangible, calculable revenue. Motion for Partial Summary Judgement at 7–9. Ninth Circuit case law, however, suggests otherwise.

Profits recoverable under § 504(b) can be divided into two categories: direct and indirect. *See Mackie v. Rieser*, 296 F.3d 909, 914 (9th Cir.2002). Direct profits are "those that are generated by selling an infringing product." *Id.; see Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir.2000) (awarding profits where the defendant sold an infringing song on a record album). For example, in *Eales*, the court awarded the plaintiff profits where her architectural plans were used by the defendants to construct a home that was then sold. 958 F.2d at 876. The court held that the plaintiff was entitled to "all profits attributable to the defendant's infringement of her copyright and to any ascertainable indirect profits." *Id.* at 881. The court calculated the direct profits as "the amount of profits [plaintiff] would have made on the house if she had sold it herself." *Id.* The court did not hold the

homeowners liable because, apparently, they were unaware that their home was being constructed with the infringing plans. *Id.* at 878.

Although *Eales* involved direct profits derived from the actual sale of the home involved, we believe the case is instructive regarding the present case. In *Eales,* the infringers were the individuals who constructed and then sold the home. The plaintiff was awarded the profits from that sale. The homeowners were not liable because they were not the infringers. Although the Molotkys have not sold their home, they are the alleged infringers in this case. As discussed further below, we believe it would be inconsistent with *Eales* to deny § 504(b) profits here simply because the Molotkys have not sold their home.

As opposed to direct profits, indirect profits involve "revenue that has a more attenuated nexus to the infringement." *Mackie,* 296 F.3d at 914. There are many examples of indirect profits in the Ninth Circuit. For instance, in *Cream Records, Inc. v. Jos. Schlitz Brewing Co.,* the Ninth Circuit upheld an award of profits where a brewing company used one of the plaintiff's copyrighted songs in a television commercial. 754 F.2d 826 (9th Cir.1985) *(per curiam ).* In that case, the plaintiff was awarded a portion of the defendant's total profit from the sale of malt liquor which could reasonably be traced to the use of the plaintiff's song in the commercial. *Id.* The court awarded indirect profits flowing from the infringement, but not derived from the direct sale of the infringing item.

Indirect profits were similarly awarded in *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.* 886 F.2d 1545 (9th Cir.1989). In *Frank,* the defendant used selections of the plaintiff's musical *Kismet* in its "Hallelujah Hollywood" revue. *Id.* The court awarded the plaintiff direct profits derived from the use of the plaintiff's work. *Id.* In

addition, the court held that a percentage of the hotel's indirect profits could be traced to the infringement. *Id.* at 1550. These indirect profits were derived from the hotel's guest accommodations, restaurants, cocktail lounges, a movie theater, casinos, etc. *Id.* The court held that the plaintiff's work helped draw customers into the hotel, which then increased the hotel's revenue from these other sources. *Id.* Consequently, indirect profits were awarded even though they were not derived from the actual sale of the infringing item.

Although indirect profits may be recovered by a copyright holder, those claims are frequently unsuccessful because profits must be "attributable to the infringement." § 504(b); 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.03[A] (2002) (explaining that, "[i]t does not suffice for a plaintiff to imagine fantastic success, if only the defendant had not gotten in the way"). Accordingly, the Ninth Circuit has limited the recovery of indirect profits to those that are non-speculative and directly attributable to the infringement. *Mackie,* 296 F.3d at 914 (citing *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.,* 772 F.2d 505, 517 (9th Cir.1985)). The plaintiff must show that "the infringing acts had an effect on profits." *Id.* at 915. At the summary judgement stage, "a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Id.* at 915–16.

If the plaintiff demonstrates both the defendant's gross revenue, and a causal relationship between the infringement and the defendant's profits, the burden then shifts to the defendant to show "his or her deductible expenses and the elements of profit attributable to factors other than the

copyrighted work." § 504(b). At trial, if it is clear that not all of the infringer's profits derived from the infringement, then the court must make some apportionment. *Cream Records, Inc.* 754 F.2d at 828.

## C. Application to the Present Case

 Assuming for the purposes of this motion that there was an infringement of ARD's copyright, ARD would be entitled to actual damages and any direct and indirect profits realized by the Molotkys. The Molotkys have not sold the home built using ARD's architectural plans. Therefore, there is no issue regarding direct profits in this case. Any potential profits here have a more "attenuated nexus to the infringement." *Mackie*, 296 F.3d at 914.

Although the Molotkys have not sold their home, it is possible that they have "profited" from its construction. That is, the value of the home could be greater than the cost to build it. In this sense, the Molotkys may have realized revenue from the construction of the home.[2] We believe that this view is in line with Congress' intent in drafting § 504(b). House Report 94–1476 states, "section 504(b) . . . recognizes the different purposes served by awards of damages and profits. Damages are awarded to compensate the copyright owner for losses from the infringement, and profits are awarded to prevent the infringer from unfairly benefitting from a wrongful act." H.R.Rep. No. 94–1476, at 161 (1976). To find that the Molotkys have not benefitted from building their home simply because they have not sold it,

would seem to be contrary to the intent expressed by Congress.

It is also inconsistent with *Eales* and other Ninth Circuit case law to find the Molotkys not liable for any profits simply because they have not sold their home. In *Eales*, the homeowners were not aware that the infringing plans were being used to build their home. In this case, though, the Molotkys are the alleged infringers. It would be inconsistent to award a copyright holder direct profits where the infringer sells the home constructed with her plans, as in Eales, but deny a copyright holder indirect profits because the home was not sold. Consequently, to "prevent the infringer from unfairly benefitting" from their infringement, it would be proper to allow ARD to recover the Molotkys' indirect profits.[3]

As stated previously, to survive summary judgment on a claim of indirect profits, "a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie*, 296 F.3d at 915–16. ARD has not met this burden here. However, the parties have specifically delayed discovery pending our decision of this motion. *See* Stipulation to Amend Scheduling Order to Conform to Order RE: Expert Witness Disclosures (# 46). Therefore, whether or not ARD has met this burden is not at issue until the close of discovery.

---

**2.** As Judge Posner has explained, there is a "very long tradition in copyright . . . cases that where a plaintiff has proved a wrong and the only issue is quantifying the damages from that Wrong, the plaintiff is to be treated with liberality when it comes to resolving questions of fact." *Deltak, Inc. v. Advanced Sys., Inc.*, 574 F.Supp. 400 (N.D.Ill.1983), *vacated on other grounds*, 767 F.2d 357 (7th Cir.1985).

**3.** Other courts have recognized that profits may be awarded in more attenuated circumstances. *See* Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.03[A] (2002) (citing *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 407 (2d Cir.1989) (recognizing the possibility of recovery for profits where the defendant has enjoyed "enhanced good will or market recognition")).

## Conclusion

We find that under § 504(b) and relevant Ninth Circuit case law that ARD may be entitled to an award of damages and indirect profits if it prevails on its copyright infringement claim, even though the Molotkys have not sold their home.

***IT IS THEREFORE HEREBY ORDERED THAT,*** as addressed above, Defense Motion for Partial Summary Judgement Regarding Measure of Recovery (# 42) is **DENIED.**