Brian ANDREAS, an individual; Storypeople, Inc., an Iowa corporation; and Storypeople Graphics, Inc., an Iowa corporation, Plaintiffs,

v.

VOLKSWAGEN OF AMERICA, INC., d/b/a Audi of America, Inc., a New Jersey corporation, and McKinney & Silver, Inc., a Delaware corporation, Defendants.

No. C00–2021.

United States District Court,
N.D. Iowa,
Eastern Division.

April 24, 2002.

J. Michael Weston, Matthew J. Krigbaum, Lisa Stephenson, Moyer & Bergman, PLC, Cedar Rapids, IA, S. Jerome Mandel, Lilly Lewis, Mandel & Norwood, Santa Monica, CA, for Plaintiffs.

Edward J. McIntosh, Michael C. Gilchrist, Dorsey & Whitney, Des Moines, IA, Edmund J. Sease, Jeffrey D. Harty, John Darrell Goodhue, McKee, Voorhees & Sease, PLC, Des Moines, IA, Howard R. Weingrad, Sara L. Edelman, Davis & Gilbert, LLP, New York City, for Defendants.

## ORDER

JARVEY, United States Magistrate Judge.

This matter comes before the court pursuant to the plaintiff's December 18, 2001 motion for an award of prejudgment and post judgment interest (docket number 97) and the defendants' December 19, 2001 motion for judgment as a matter of law or in the alternative for a new trial or remittitur (docket number 100). The court held a hearing on these motions on March 12, 2002. The motion for prejudgment and post judgment interest is granted, the motion for judgment as a matter of law is granted in part and denied in part, and the motions for a new trial or remittitur are denied.

### FACTS

This copyright infringement case arises out of the text of a television commercial for the Audi TT automobile. The plaintiff, Brian Andreas, alleged that he is the author of that text, that it was protected by the copyright laws and that it was used without his permission. The plaintiff claims that the commercial infringes his work "Angels of Mercy," a depiction of an angel with text that reads, "Some people don't know that there are angels whose only job is to make sure you don't get too comfortable & fall asleep & miss you life." The "Angels of Mercy" piece was first sold in print form in 1994.

The commercial at issue was created by the advertising agency, McKinney & Silver, for its client, Audi. The commercial is referred to as the "Wake Up Call" commercial. The thirty-second commercial depicted the Audi TT Coupe in a garden among neoclassical statues. It was accom-

panied by music composed by Bobby McFerrin. The only words in the Audi commercial, spoken as a voice over, state the following: "I think I just had a wake-up call, and it was disguised as a car, and it was screaming at me not to get too comfortable and fall asleep and miss my life." It focuses on the Audi TT when it states "disguised as *a* car and *it* was screaming at me." It then focuses twice on the TT emblem on the back of the car. The trailer shows "Audi The New TT." No other car is shown. The commercial aired in 1999.

Trial to a jury was held from November 27, 2001 through December 4, 2001. On December 5, 2001, the jury found McKinney & Silver and Audi liable for copyright infringement. The jury awarded the plaintiff $115,000 in actual damages, $570,000 of Audi profits, and $280,000 of profits from McKinney & Silver. The defendants then moved for judgment as a matter of law, remittitur, or a new trial. The plaintiff argues that the court does not have jurisdiction to hear the post-trial motions and even if heard, the motions should be denied because the jury awards were supported by the evidence.

## JURISDICTION

**The Court has Jurisdiction Because the Defendants' Post-trial Motion Satisfied the Requirements of Federal Rule of Civil Procedure 7.**

The first issue raised is whether this court has jurisdiction to hear the defendant's motion. The plaintiff contends that under *Federal Rule of Civil Procedure* 7, the defendants' motion was filed within the 10 day period for post judgment motions but the motion itself was deficient in that it did not state any grounds for appeal. The defendants contend that their motion for judgment as a matter of law satisfied *Federal Rule of Civil Procedure* 7 due to the flexibility of the Rule based on

the specific circumstances of each case. Furthermore, the defendants argue that they were given permission to wait for a transcript of the trial before filing their briefs so they could include references to the trial transcript in their briefs. The defendants' motion stated:

COMES NOW, the Defendants, VOLKSWAGEN OF AMERICA, INC., d/b/a AUDI OF AMERICA, INC., and MCKINNEY & SILVER, INC., and moves the Court pursuant to Federal Rule of Civil Procedure 50 for an order granting judgment as a matter of law to defendants on plaintiff BRIAN ANDREAS' claim for profits. Alternatively, if the Court decides not to vacate the award or order a new trial on the issue of McKinney & Silver's profits pursuant to Federal Rule of Civil Procedure 59. Pursuant to the Parties' teleconference with the Court on December 18, 2001, a supporting memorandum of law will be filed, pursuant to a briefing schedule to be determined once the trial transcript is available.

*Federal Rule of Civil Procedure* 7 sets forth the required form of motions. The rule says, "An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion." *Fed.R.Civ.P.* 7(b)(1). In *Martinez v. Trainor*, 556 F.2d 818 (7th Cir.1977), the Seventh Circuit Court of Appeals held that a motion that failed to cite even one ground for relief, lacked reasonable specificity and, as a result, the motion did not toll the time to file an appeal. The court reasoned, "if a party could file a skeleton motion and then fill it in, the purpose of the time limitation would be defeated." *Id., see also, Riley v. North-*

*western Bell Telephone Company,* 1 F.3d 725, 727 (8th Cir.1993) (court held that post-trial document did not constitute a motion because the notice of motion did not state with particularity the grounds therefor as required by *Fed.R.Civ.P.* 7(b)(1)).

The particularity requirement of post-trial motions is to be read flexibly in "recognition of the peculiar circumstances of the case." *Cambridge Plating Co., Inc. v. Napco, Inc.,* 85 F.3d 752, 760 (1st Cir.1996) *quoting, Registration Control Sys., Inc. v. Compusystems, Inc.,* 922 F.2d 805, 808 (Fed.Cir.1990). The court went on to explain its holding by saying:

> This is because Rule 7 is designed "to afford notice of the grounds and prayer of the motion to both the court and the opposing party, providing that party with a meaningful opportunity to respond and the court with enough information to process the motion correctly." When a motion is challenged for lack of particularity the question is "whether any party is prejudiced by a lack of particularity or 'whether the court can comprehend the basis for the motion and deal with it fairly.' "

*quoting Compusystems, Inc.* 922 F.2d at 807–08; 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1192, at 42 (1990).

The defendants raised the issue of awarding profits in a motion in limine, at the end of the plaintiff's presentation of evidence, and at the conclusion of their case. It comes as no surprise to the plaintiff that the defendants are contesting the jury's award of profits and the plaintiff was not prejudiced by the bare motion and subsequent briefs. The defendants filed a motion with the court within the 10 day period. The motion, although not very specific, set forth the grounds for post-judgment motions. Specifically, the defendants indicated in their post-trial motion that they planned to appeal the award of

the defendants' profits to the plaintiff. With the court's permission, the defendants waited until they received a transcript of the trial and then filed their briefs. The motion filed by the defendants on December 19, 2001 satisfied the requirements of *Fed.R.Civ.P.* 7(b)(1). As a result, this court has jurisdiction to determine the motions for judgment as a matter of law, remittitur, and for a new trial.

■ More importantly, this court reserved ruling on the motions for judgment as a matter of law made at the end of the plaintiff's presentation of evidence and at the end of the defendants presentation of evidence. The court now rules on those motions for which ruling was reserved.

## AWARD OF DAMAGES

**The Jury Award of $570,000 of Defendant Audi's Profits to the Plaintiff was Improperly Based on Speculation and Conjecture Because the Plaintiff failed to Prove a Connection Between the Infringement and Audi's Revenue.**

The defendants have moved the court for an order granting judgment as a matter of law on the issue of the award of Audi's profits. The defendants contend that the plaintiff failed to prove any connection between the infringement and the revenues realized by Audi due to the sales of the new TT automobile. The plaintiff argues that he met his burden by establishing the gross revenues earned by Audi through the sales of the TT automobile, by proving that the advertising campaign was very important to Audi's promotional plan and by producing evidence establishing that the bonus paid by Audi to McKinney & Silver was based, in part, on the success the commercial had on the public (See trial exhibits 33, 56, 57, and 64).

Pursuant to 17 U.S.C. § 504(b):

The copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages. In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyright work.

■ The typical copyright infringement case plaintiff bears only the minimal burden of showing (1) infringement, and (2) defendant's gross revenues. *Rainey v. Wayne State University*, 26 F.Supp.2d 963 (E.D.Mich.1998), once this prima facie showing is met, a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement arises, and the burden then shifts to the defendant to demonstrate what portion of its profits are not traceable to the infringement. *Id.* at 971–72. A court may deny recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement. *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 517 (9th Cir.1985).

This is true in cases where the defendant directly infringes by performing or selling copyrighted material such as in *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505 (9th Cir.1985).[1] However, courts have not strictly applied that standard where the copyright holder seeks to recover indirect profits, *Rainey*, supra at 972, as is the case here. That is, the plaintiff is seeking profits from the sale of cars, not the sale of his copyrighted material.

■ In *On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir.2001), the Second Circuit Court of Appeals held that the plaintiff was required to submit evidence limited to the gross revenues of the Gap label stores and not Gap, Inc. as a whole. The plaintiff in *Gap* claimed that The Gap, Inc. used sunglasses he designed without his permission in print advertisements for Gap label clothing. The advertisements showed models wearing Gap label clothing and the plaintiff's sunglasses. The court in *Gap* analogized the situation to a publisher selling an anthology of poetry which contained a poem protected by the plaintiff's copyright. The court found that plaintiff's statutory burden could not be discharged by submitting the publisher's gross revenue resulting from its publication of all the books published by the publisher. Similarly in *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir.1983), the Seventh Circuit held:

all [the burden shifting language of] § 504(b) means is that [the plaintiff] could have made out a prima facie case for an award of infringer's profits by showing [the defendant's] gross revenues from the sale of the infringing maps. It was not enough to show [the defendant's] gross revenues from the sale of everything he sold.

In this case the plaintiff was permitted to go forward and attempt to show the gross revenues generated as a result of the commercial from the sale of the Audi TT automobile as opposed to the gross revenues of Audi of America. The plaintiff bears the burden of proving that the infringement was the cause of its loss of revenue. *Data General Corporation v. Grumman Systems Support Corporation*, 36 F.3d 1147, 1170 (1st Cir.1994). Damages may be recovered only if there is a

---

**1.** The defendant performed plaintiff's copyrighted music in a show at its Las Vegas casino. The plaintiff recovered profits from the show and also received indirect profits from the operation of the casino that benefitted from the show.

necessary, immediate, and direct causal connection between the wrong and the damages. *Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 509 (2d Cir.1977). A plaintiff may seek compensation for both direct and "indirect" losses, as long as the losses claimed are not unduly speculative. *Business Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 404 (2d Cir.1989). Although the plaintiff may be awarded indirect profits of the infringer, such claims are difficult to prove and are often unsuccessful. 1 *Nimmer on Copyright* § 14.03[A] at 14–33 (1996). Damages must be based on credible evidence, not speculation. *Rainey*, 26 F.Supp.2d at 971; *citing, Sunset Lamp Corp. v. Alsy Corp.*, 749 F.Supp. 520, 524 (S.D.N.Y. 1990). In *Rainey*, 26 F.Supp.2d at 971, the court held that because the plaintiff failed to introduce any facts by which a reasonable non-speculative formula could be used to award profit damages, there was no basis for allowing the plaintiff to recover profits.

■■■ In a copyright action, a trial court is entitled to reject a proffered measure of damages, if it is too speculative. *See Frank Music Corp.*, 772 F.2d at 513. Although uncertainty as to the amount of damages will not preclude recovery, uncertainty as to the fact of damages may. *See id.* A court may deny recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement. *See id.;* 3 M. Nimmer, *On Copyright*, § 14.03[A]; *Roy Export Co. v. Columbia Broadcasting System, Inc.*, 503 F.Supp. 1137, 1156–57 (S.D.N.Y.1980) (profits from an infringing unsponsored television broadcast could not be ascertained since benefit received by CBS "consists of unmeasurable good-will with affiliates and increased stature and prestige vis-a-vis competitors."), *aff'd*, 672 F.2d 1095 (2d Cir.), *cert. denied*, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). When a copyright is infringed, all infringers are jointly and severally liable for plaintiffs' actual damages, but each is severally liable for his own illegal profit; one defendant is not liable for the profit made by another. *Frank Music Corp.*, 772 F.2d at 519.

In *Estate of Vane v. The Fair, Inc.*, 849 F.2d 186, 188–89 (5th Cir.1988), the Fifth Circuit held that the trial court properly concluded that the testimony introduced was inadequate to establish The Fair's profits attributable to the infringement. The plaintiff in the *Vane* case presented an expert that conducted a multiple regression analysis to show how much each dollar The Fair spent on television advertising would yield in sales. The expert examined monthly data, including profit-and-loss statements and summaries of media costs over a five year period. The expert then multiplied the amount in sales generated for each dollar spent on advertising by the dollar amount spent on the infringing commercial to yield a gross revenue figure, then deducted certain costs to The Fair, including the actual cost that The Fair had paid for the merchandise it sold, transportation charges for getting the merchandise to the stores, a 3% allowance for pilferage, and some other direct operating expenses. The court determined that the expert's analysis was flawed because it did not take into account the fact that the infringed material was only a fraction of any given commercial. Some portion of the profits may have been attributable to the infringement but much of the profits must be attributed to non-infringing aspects of the commercials.

■■■ In this case there was no analysis, from an expert or anyone else, to tie Audi's revenues in a nonspeculative fashion to the infringement. Audi did not sell the infringed material. Audi sold automobiles. The plaintiff failed to present evidence that the revenue received by Audi through the sale of the Audi TT was a

result of the infringement of the plaintiff's copyright. Without evidence tying the revenues to the infringement any award of such profits could only be based on speculation or conjecture. As stated above, although uncertainty as to the amount of damages will not preclude recovery, uncertainty as to the fact of damages may. *Frank Music*, 772 F.2d at 513. A court may deny recovery of a defendant's profits if they are only remotely or speculatively attributable to the infringement.

There is uncertainty as whether the infringement of plaintiff's words resulted in additional revenue to Audi. The plaintiff failed to show that the infringed words in the commercial resulted in the sale of any Audi TT. The plaintiff points to the bonus paid to the advertising agency, based in part on, the "ad recall" of the consumer public and the fact that Audi had expressly indicated that the Audi TT promotion was an important component in increasing brand promotion. While most people believe that advertising contributes somehow to the sales of motor vehicles, it is not sufficient for a plaintiff to rely on such intuitive notions as proof of causation. This evidence does not satisfy the requisite proof necessary to establish an award of profits in an indirect infringement case. *See Vane, Rainey,* and *Frank Music, supra.*

The plaintiff contends that *On Davis v. The Gap, Inc.,* 246 F.3d 152 (2d Cir.2001) provides the necessary standard of proof in a copyright infringement case in which the plaintiff seeks indirect profits. The plaintiff argues that by establishing the gross revenues generated by the sales of the Audi TT automobile, he has satisfied the evidentiary burden established in *The Gap* case and the burden shifts to the defendant to prove the actual profits resulting from the gross revenues.

The standard in *The Gap* case was explained in dicta. The opinion itself dealt with the fact that the plaintiff had previously licensed his copyright for $50 and was asking for $2.5 million for the unauthorized use by Gap label stores. The plaintiff in *The Gap* pointed to the gross revenues earned by Gap, Inc. to support his contention that he was entitled to a lot of money based on the success of the corporation. The Second Circuit explained that the proper measure should have been the revenues generated by the Gap label clothing stores because the commercial containing the infringed item was for the Gap label clothing stores. The case stands only for the proposition that gross revenues of a very large corporation could not be presented as evidence when one subsidiary or division infringes on someone else's copyright.

In this case, the plaintiff established the total number of Audi TT automobiles sold (5,139) and total revenue generated of $153.7 million. The infringing commercial was one of three used to promote the new Audi TT. The plaintiff argues that the jury could infer that the advertisements bolstered dealer confidence and yielded orders of the Audi TT. The plaintiff further argues that Audi spent a large proportion of its advertising budget on the Audi TT campaign leading the jury to infer that Audi paid for the advertisements in hopes of increasing sales.

The plaintiff was able to show revenues generated by the Audi TT for the time period at issue, but there was no evidence that meaningfully tied the infringement to the sales of the cars. There was no evidence that the commercial containing the infringing material led to the sale of one Audi TT and no formula based on dealer traffic or any other way to infer a causal relationship. The jury was left to speculate as to how much of Audi's profits resulted from the infringement. An award based on speculation cannot stand. *See*

*McGreevy v. Daktronics, Inc.*, 156 F.3d 837, 841 (8th Cir.1998); 4 Melville B. Nimmer & David Nimmer, *Nimmer On Copyright* § 14.03[A] at 14–29 (1998) (when an infringer's profits are only remotely and speculatively attributable to the infringement, courts will deny recovery to the copyright owner); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1050 (8th Cir.2000) (motion for a judgment as a matter of law must be granted when the nonmovant's case rests solely upon speculation and conjecture lacking in probative evidentiary support). As a result, judgment as a matter of law regarding the award of profits from Audi to the plaintiff in the amount of $570,000 is granted.

**The Award of Profits from Defendant McKinney & Silver to the Plaintiff in the Amount of $280,000 was Based on Sufficient Evidence.**

■ The defendants argue that the award of profits from McKinney & Silver was improper and excessive. They contend that the jury awarded nearly one-half of all the profits that McKinney & Silver earned during the time it was creating the commercial in question. The defendants allege that the proper measure of profits from McKinney & Silver should have been calculated using a different method than the method used by the jury. The defendants contend that because McKinney & Silver created three commercials for Audi which accounted for ninety percent of all the time spent on the Audi campaign, and each commercial had three components (music, words, and imagery) the correct factor should be ten percent of all profits (90% of time × 33% of that time on each commercial × 33% of that time on each element in a commercial). The defendants calculations are based on testimony by McKinney & Silver employee estimations as to how much time was spent on each project. However, McKinney & Silver did not keep time records showing the amount of time spent on each project. There was no way for the plaintiff to prove time spent because the records did not exist. The defendants own calculations are based on estimations.

Given that the defendant McKinney & Silver directly infringed the copyright of the plaintiff, causation is not an issue. As stated above, where the fact of damages is clear, but the amount of the damages is not, reasonable damages awards will be upheld. *See Frank Music*, 772 F.2d at 513, citing, *Universal Pictures Co. v. Harold Lloyd Corp.*, 162 F.2d 354, 369 (9th Cir.1947). The plaintiff probably got the benefit of the doubt from the jury. However, the protected work and the infringed work were very, very similar. McKinney & Silver denied that any coping and explained the infringement as a coincidence that occurred to the agency employee at a photocopier just prior to a presentation to Audi. McKinney & Silver produced no drafts or anything tangible to show its creative process. The defendants are asking the court to substitute its judgment for that of the jury. The court is unwilling to do so.

The plaintiff satisfied his burden by showing the infringement and the defendant's gross revenues. *See Rainey*, 26 F.Supp.2d at 971–72. The defendant failed to rebut the presumption that profits were attributable to the infringement by merely offering estimations as to how much time was spent on each project and by failing to produce evidence as to the time spent developing the elements of each commercial (music, imagery, and words). The witness for the defendant McKinney & Silver admitted that there were no time records kept, but went on to explain the measure of damages they thought was appropriate. The jury disagreed.

Based on the failure of the defendant McKinney & Silver to better show what

portion of its revenues represented profits and what portion of its profits were not traceable to the infringement, the jury's determination that $280,000 of McKinney & Silver's profits were attributable to the infringement was proper and will not be disturbed by this court. The defendants' motion for judgement as a matter of law regarding the profit damages awarded to the plaintiff from McKinney & Silver is denied.

■ The jury's award was not against the clear, overwhelming or great weight of the evidence so a new trial on the issue of damages awarded to the plaintiff from the defendant McKinney & Silver is unwarranted. *See Crowley Beverage Company, Inc. v. Miller Brewing Co.*, 862 F.2d 688, 690 (8th Cir.1988). Furthermore, the court will not grant a remittitur in this case because the jury's award was based on sufficient evidence and the award was not so grossly excessive that the result is monstrous or shocking. *See Callantine v. Staff Builders, Inc.*, 271 F.3d 1124, 1133–34 (8th Cir.2001).

## PREJUDGMENT AND POST–JUDGMENT INTEREST

**The Plaintiff is Entitled to Prejudgment Interest at a Rate Equal to the Rate Established in Iowa Code § 668.13 from May 3, 2000 through December 5, 2001 and Post-judgment Interest at a rate of 2.23% from December 6, 2001.**

■ The plaintiff moved the court for an award of prejudgment and post-judgment interest. The defendant does not dispute that the plaintiff is entitled to post-judgment interest at the rate of 2.23% from December 6, 2001. The defendant does, however, dispute that the plaintiff is entitled to prejudgment interest on the award of profits and the rate at which prejudgment should be paid if at all. The defendant argues that if prejudgment interest is allowed, it should only be on the portion of the award representing actual damages and should be at a rate equal to the rate contained in 28 U.S.C. § 1961 which corresponds to the 52 week treasury bill rate.

The plaintiff argues that prejudgment interest should awarded on the entire amount of the award at a rate equal to the market rate. The plaintiff suggests the market rate from May 3, 1999 through December 5, 2001 was either 7.75% compounded quarterly or 8.25% not compounded. The plaintiff states in his memorandum of law supporting his motion for prejudgment and post-judgment interest that 7.75% represented the prime rate in May of 1999 and 8.25% represents the average prime rate for the period of May 1999 through December 1999.

In *Kleier Advertising, Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1040 (10th Cir.1990), the Tenth Circuit Court of Appeals held that prejudgment interest may be awarded under the Copyright Act. *See U.S. Industries, Inc. v. Touche Ross & Co.*, 854 F.2d 1223, 1255 (10th Cir.1988) (The decision whether or not to allow prejudgment interest rests within the sound discretion of the trial court.); *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 886 F.2d 1545, 1550 (9th Cir.1989) and *Gorenstein Enterprises, Inc. v. Quality Care–USA, Inc.*, 874 F.2d 431, 436 (7th Cir.1989) (cases acknowledge that the Copyright Act does not provide for prejudgment interest, however, each case cites decisional law supporting the award of such interest on federal claims even where the governing statute is silent on the issue). *Frank Music* held that prejudgment interest is necessary to compensate a copyright plaintiff fairly, to compensate the injured party for the loss of the use of money he would otherwise have had, and to deter infringe-

ment of copyrights. Profits are awarded to the plaintiff not only to compensate for the plaintiff's injury, but also and primarily to prevent the defendant from being unjustly enriched by its infringing use of the plaintiff's property. *See Sheldon v. Metro–Goldwyn Pictures Corp.,* 309 U.S. 390, 399, 60 S.Ct. 681, 84 L.Ed. 825 (1940). It would be "anomalous" to hold that a plaintiff would be entitled to recover profits flowing from infringement but not revenue generated by the use of the profits. *Frank Music,* 886 F.2d at 1552; *Gyromat Corp. v. Champion Spark Plug Co.,* 735 F.2d 549, 556 (Fed.Cir.1984) (prejudgment interest applies to both royalties and lost profits). For the reasons set out above, the Tenth Circuit in *Kleier* said, "for these reasons we pronounce the rule that prejudgment interest is available to plaintiffs under the Copyright Act." *Kleier,* 921 F.2d at 1041 (10th Cir.1990). The court went on to say:

> "[A]n award of prejudgment interest under federal law is governed by a two-step analysis. First, the trial court must determine whether an award of prejudgment interest would serve to compensate the injured party. Second, when an award would serve a compensatory function, the court must still determine whether the equities would preclude the award of prejudgment interest." *Touche Ross,* 854 F.2d at 1257 (prejudgment interest awards should be governed by fairness). Because there is no federal statutory interest rate on prejudgment interest, the rate imposed will be left to the trial court's discretion.

*Id.* at 1042, fn. 4.

In *Loeffler v. Frank,* 486 U.S. 549, 557–58, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988) the court held:

Under the Court's analysis, the award should be a function of (i) the need to compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court.

The rate of prejudgment interest and the issue of whether the interest awarded should be simple or compounded are matters left mostly to the discretion of the district court. *Century Wrecker Corporation v. E.R. Buske Manufacturing Company, Inc.,* 913 F.Supp. 1256, 1280 (N.D.Iowa 1996) *citing, Studiengesellschaft Kohle m.b.H. v. Dart Indus., Inc.,* 862 F.2d 1564, 1580 (Fed.Cir.1988). Regarding the rate at which prejudgment interest is calculated, the district court has the discretion to determine whether to use the prime rate, the prime rate plus a percentage, the U.S. Treasury rate, state statutory rate, corporate bond rate, or whatever rate the court deems appropriate under the circumstances. *See id.; Allen Archery, Inc. v. Browning Manuf. Co.,* 898 F.2d 787, 789 (Fed.Cir.1990). Prejudgment interest should be awarded, absent some justification for withholding such an award. *Id.* at 1282. The court in *Century Wrecker,* found that due to the delay by the plaintiff in bringing the case and the resulting prejudice suffered by the defendant, the appropriate rate of prejudgment interest was the U.S. Treasury rate, compounded annually.

In this case there were no circumstances that would dictate a departure from the general rule that prejudgment interest should be awarded, the only issue is at what rate should the interest be calculated. As stated above, the trial court has discre-

tion to employ any rate given the circumstances of the case. The plaintiff was entitled to damages and profits when the infringement occurred. He should receive prejudgment interest to compensate for the delay in receiving all damages. Prejudgment interest in this case will be calculated pursuant to Iowa Code § 668.13. The prejudgment interest will be calculated on the entire amount of the award of $395,000 from May 3, 2000 through December 5, 2001.

Post-judgment interest will be calculated at the rate of 2.23% from December 6, 2001, pursuant to 28 U.S.C. § 1961.

Based on the foregoing,

IT IS ORDERED that the defendants' motion for a judgment as a matter of law regarding the award of $570,000 of Audi's profits is granted. The clerk shall enter an amended judgment in favor of the plaintiffs and against the defendants jointly and severally in the amount of $115,000. Judgment shall be entered against McKinney & Silver in the amount of $280,000. The defendants' motion for judgment as a matter of law on the award of McKinney & Silver's profits is denied. The defendant's motion for remittitur or, in the alternative, a new trial is denied. The plaintiff's motion for prejudgment and post-judgment interest is granted as set forth above.